IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IMEG CORP.,

Petitioner,

v.

SUNIL PATEL,

Respondent.

Civil Action No. 20-111-CFC

---

Mary Sikra Thomas, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; Scott Commerson, John P. LeCrone, DAVIS WRIGHT TREMAINE LLP, Los Angeles, California

*Counsel for Petitioner*

Ryan Patrick Newell, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Richard J. Frey, David M. Prager, Brock J. Seraphin, EPSTEIN BECKER & GREEN, P.C., Los Angeles, California

*Counsel for Respondent*


**<u>MEMORANDUM OPINION</u>**


January 19, 2021
Wilmington, Delaware

_Colm F. Connolly_

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

IMEG Corp. has filed a petition to compel arbitration against Respondent Sunil Patel pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 4.  IMEG seeks to compel Patel to participate in an arbitration of claims IMEG previously brought against Patel in the United States District Court for the Central District of California.  *IMEG Corp. v. Sunil Patel*, No. 2:19-cv-3990 (C.D. Cal.).  The California district court dismissed the California action based on Patel's arguments that (1) a provision in a merger agreement required IMEG to bring its claims against Patel in an arbitration proceeding in Delaware even though Patel was neither a named party nor a signatory of the agreement and (2) "all questions of arbitrability should be submitted to the arbitrator."  D.I. 1-1, Ex. C at 1.  The California district court did not compel Patel or IMEG to participate in a Delaware arbitration; nor could it have since, as Patel argued before the California court, section 4 of the FAA prohibits a district court from compelling an arbitration outside its district.  D.I. 1-1, Ex. C at 12.

When IMEG reasserted its claims in a Demand for Arbitration filed with a Delaware arbitrator, Patel and his counsel executed an about-face and argued that the Delaware arbitrator had no jurisdiction to hear IMEG's claims against Patel because Patel had not signed and was not a party to the merger agreement.  D.I. 19-

1, Ex. H, at 1.  Patel's counsel also represented to the arbitrator that the California district court had not "dismiss[ed] IMEG's claims 'in favor of arbitration.'"  D.I. 19-1, Ex. H, at 1.  And he told the arbitrator that it "d[id] not have jurisdiction to decide questions regarding arbitrability."  D.I. 19-1, Ex. H, at 4.  Based on these representations, the arbitrator determined that absent an agreement by the parties or a court order mandating arbitration it would not arbitrate IMEG's claims against Patel.  The following week, IMEG filed its Petition.

Patel opposes the Petition and has moved to dismiss the action for lack of personal jurisdiction.  D.I. 12.  After Patel filed his motion, IMEG filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11.  D.I. 23.

I have subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and 9 U.S.C. § 4.  For the reasons stated below, I will grant IMEG's Petition, deny Patel's motion to dismiss, and grant in part and deny in part IMEG's motion for sanctions.

## I.    Background

### A.    The Parties

IMEG is a Delaware corporation that specializes in "building systems, infrastructure, program management, and construction-related services."  D.I. 1 ¶ 6, 14.  IMEG is the successor entity to two engineering firms, KJWW Corp. and TTG Corporation who merged into IMEG pursuant to a merger agreement signed

2

by all three companies on September 22, 2015.  Under the terms of the merger

agreement, KJWW and TTG became wholly-owned, independently operated

subsidiaries of IMEG as of the date of the merger agreement and then merged into

IMEG and ceased to exist on January 1, 2017.

Patel was a shareholder and officer of TTG beginning in 2003.  Pursuant to

the merger agreement, he became a director of IMEG upon the execution of the

agreement.  One month after the merger was consummated on January 1, 2017,

Patel was terminated as an employee and director of IMEG.  D.I. 13 at 5.

### B.  Relevant Provisions of the Merger Agreement

KJWW and TTG represented in the merger agreement that they had no

undisclosed liabilities and that they had complied with all applicable laws.

Under section 9.18(a) of the agreement, the parties agreed to resolve by

binding arbitration in Wilmington, Delaware any disputes "in the event a

resolution is not reached among the parties" within 60 days after written notice of

the dispute was served.  D.I. 1-2, Ex. E, Attach. B at 54–55.  Under section 9.18(b)

of the agreement, the parties agreed to submit to the exclusive jurisdiction of the

state and federal courts in Delaware to resolve any disputes over the interpretation

and enforcement of the agreement.  D.I. 1-2, Ex. E, Attach. B at 55.

C.     **The California Action**

1.     **The California Complaint**

On May 7, 2019, IMEG initiated the California action when it filed an 18-page, 127-paragraph complaint both "in its own capacity and in its capacity as the successor to the rights and obligations of KJWW and TTG." D.I. 1-1, Ex. B ¶ 3. Patel was the only named defendant in the complaint.

The bulk of the complaint is a detailed exposition of a "rent-a-vet" scheme orchestrated by Patel and another TTG officer, Zareh Astourian. According to the complaint, Patel and Astourian "used a service-disabled military veteran as a 'front-man' to fraudulently obtain government contracts" set aside for disabled veterans under California law. D.I. 1-1, Ex. B ¶ 16. The scheme began in October 2009 and continued until October 2016, when KJWW and IMEG uncovered it. D.I. 1-1, Ex. B ¶¶ 23, 44, 53. The scheme exposed TTG and IMEG to millions of dollars in potential federal and state fraud claims. In 2018, after incurring over a million dollars in investigative costs, IMEG paid the United States Department of Justice approximately five million dollars to settle federal claims arising out of the scheme. D.I. 1-1, Ex. B ¶¶ 59–60, 62. The State of California is currently engaged in its own investigation of the scheme. D.I. 1-1, Ex. B ¶ 64; D.I. 1-1, Ex. D at 2.

IMEG alleged in the complaint nine causes of action, all of which are premised on Patel's role in the rent-a-vet scheme. Count I accused Patel of

4

breaching the fiduciary duties he owed to TTG as an officer from February 8, 2010 through January 1, 2017 "by . . . implementing and perpetuating the [rent-a-vet] scheme" and, in so doing, "knowingly act[ing] against TTG's interests and unreasonably expos[ing] TTG to civil and criminal liability for defrauding the government." D.I. 1-1, Ex. B ¶68.  Count II accused Patel of breaching the fiduciary duties he owed to IMEG as a director from September 30, 2015 through his termination on February 1, 2017 "by . . . implementing and perpetuating the fraudulent [rent-a-vet] scheme" and, in so doing, "knowingly act[ing] against IMEG's interests and unreasonably expos[ing] IMEG to civil and criminal liability for defrauding the government." D.I. 1-1, Ex. B ¶ 73, 75.  Count VII accused Patel of breaching his fiduciary duties to IMEG by "failing to disclose [the rent-a-vet] scheme and . . . the complete facts about TTG's business." D.I. 1-1, Ex. B ¶115.[1] Count VIII alleged a civil conspiracy claim against Patel based on his role as a "co-conspirator[ ] involved in designing, implementing, and perpetuating the [rent-a-vet] scheme." D.I. 1-1, Ex. B ¶ 118.  And Count IX accused Patel of aiding and

---

[1] Count VII is titled "Constructive Fraud under [California] Civ. Code § 1573 on Behalf of IMEG." D.I. 1-1, Ex. B ¶16.  But section 1573 defines "constructive fraud" as "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him." Cal. Civ. Code § 1573 (West).  Thus, Count VII is effectively a breach of fiduciary duty claim. *See Byrum v. Brand*, 219 Cal. App. 3d 926, 937 (Ca. Ct. App. 1990) ("The statute which governs claims of breach of fiduciary duty is section 1573....").

abetting others "who committed the [rent-a-vet] scheme." D.I. 1-1, Ex. B ¶ 126.
None of these counts discuss the Merger Agreement; nor do these claims depend
on allegations or proof that TTG or Patel violated any obligation under the Merger
Agreement.

Counts III through VI are fraud claims. Counts III and V allege that Patel
defrauded KJWW (Count III) and IMEG (Count V) into signing the merger
agreement by falsely representing to them "that TTG's business was not engaged
in unlawful conduct when in fact he knew that it was . . . because TTG was
engaged and had been engaged in the [rent-a-vet] scheme." D.I. 1-1, Ex. B ¶¶ 80–
81, 96–97. Counts IV and VI allege that "[a]t least upon signing the Merger
Agreement," Patel owed KKJW (Count IV) and IMEG (Count VI) a duty to
disclose the truth about TTG's business practices and engaged in fraud by
"intentionally failing to disclose the [rent-a-vet] scheme." D.I. 1-1, Ex. B ¶¶ 88–
89, 104–105.

### 2.    Patel's Motion to Dismiss

Patel moved to dismiss the California action "on the grounds that: (i) *th[e]
action* is subject to mandatory arbitration; (ii) IMEG's Complaint is subject to the
doctrine of waiver; and (iii) IMEG's Complaint fails to state a claim against Patel."
D.I. 1-1, Ex. C at 1 (emphasis added). Patel's lead counsel in this action, Richard
Frey, a partner with the law firm Epstein Becker & Green, P.C., signed the motion.

The motion in the California action stated in relevant part:

> IMEG purportedly brings this action against Patel in his individual capacity.  As evident from a plain reading of the Complaint, however, all of IMEG's allegations of wrongdoing against Patel arise from his actions in his capacity as an officer and director of either TTG or IMEG.
>
> The [Merger Agreement] provides that disputes arising under the agreement shall be submitted to binding arbitration in Wilmington, Delaware in accordance with the rules of the American Arbitration Association.  While Patel is not a signatory to the Merger Agreement, he can still enforce it against IMEG, because all IMEG's claims in this action arise out of and relate directly to the Merger Agreement.  Further, IMEG's claims against Patel are inherently bound up with the claims IMEG brings in a parallel action against Zareh Astourian (the "*Astourian* Matter"), who is a signatory to the Merger Agreement.  Accordingly, the Court should dismiss IMEG's Complaint based on the agreement to arbitrate, and all questions of arbitrability should be submitted to the arbitrator.
>
> * * * *
>
> . . . IMEG's allegations against Patel relate to conduct he undertook as an agent of TTG (a signatory to the Merger Agreement) and directly relate to the representations and warranties TTG made in the Merger Agreement.  In short, Patel is being sued precisely because of his duties as an officer and director of TTG and IMEG and the claims asserted against him all arise out of or are related to the Merger Agreement.  As such, Patel can enforce the arbitration agreement.  In addition, the Stockholders of TTG, such as Patel, were represented by Zareh Astourian, a signatory of the agreement.  As the TTG Representative, Astourian entered into the Merger Agreement on behalf of the Stockholders of TTG, such as Patel. Consequently, Patel can assert the arbitration provision within the Merger Agreement.

7

D.I. 1-1, Ex. C at 1, 7–8 (citations omitted).

The motion further stated:

- "[a]s a former shareholder of TTG, Patel is a party to the Merger Agreement vis-à-vis TTG's representative, Zareh Astourian," D.I. 1-1, Ex. C at 3;

- "[u]nder principles of agency, the arbitration provision [in the merger agreement] applies to Patel," D.I. 1-1, Ex. C at 7;

- the TTG Representative, Astourian[,] entered into the Merger Agreement on behalf of the Stockholders of TTG, such as Patel[,] D.I. 1-1, Ex. C at 8;

- "an obligation to arbitrate does not attach only to those who have actually signed the agreement to arbitrate," D.I. 1-1, Ex. C at 9 (internal quotation and citation omitted);

- "the fact that Patel is not a 'party' to the Merger Agreement is of no moment in evaluating whether the matter should be arbitrated," D.I. 1-1, Ex. C at 11; and

- "IMEG's claims against Patel are subject to the arbitration provision of the Merger Agreement," D.I. 1-1, Ex. C at 20.

Finally, with respect to the issue of the authority to decide whether IMEG's claims against Patel were subject to arbitration, the motion stated:

> Once the court finds that Patel is entitled to invoke the arbitration agreement against IMEG, it must dismiss or stay the action because *questions as to whether IMEG's claims against Patel are subject to the arbitration provision in the Merger Agreement must be decided by the arbitrator.*

8

\* \* \* \*

> *Here, . . . the Merger Agreement clearly and*
> *unmistakably delegated the question of arbitrability to*
> *the arbitrator.*

D.I. 1-1, Ex. C at 11–12 (emphasis added).

Patel and his counsel also filed a reply brief in support of Patel's motion to

dismiss.  It stated in relevant part:

- "the Court should dismiss IMEG's claims *so that they may be arbitrated in Wilmington, Delaware consistent with the terms of the Merger Agreement*,' D.I. 15-4, Ed. D at 1 (emphasis added);

- "IMEG's position that Patel cannot enforce the arbitration agreement because he is a nonsignatory fails because IMEG's claims are: (1) based on Patel's conduct as an agent of TTG; and (2) inextricably connected with the representations TTG made in connection with the Merger Agreement[,]" D.I. 15-4, Ex. D at 2;

- "Because Patel can enforce the arbitration agreement under theories of agency . . ., any remaining questions of arbitrability should be decided by the arbitrator," D.I. 15-4, Ex. D at 14;

- "the Court must honor [the] parties' agreement to arbitrate arbitrability[,]" D.I. 15-4, Ex. D at 14;

- "The primary purpose of Patel's Motion to Dismiss is to enforce the arbitration agreement.  Once the Court finds that Patel can enforce it, all remaining issues should be delegated to the arbitrator," D.I. 15-4, Ex. D at 18.

In response to Patel's motion, IMEG argued that it had "su[ed] Patel in his

personal capacity, not as an agent of TTG" and that, since he was not a party to the

merger agreement, he had "no right to invoke and enforce" the agreement's

arbitration provision.  D.I. 15-3, Ex. C at 8.  IMEG further argued that its claims against Patel were not dependent or inextricably bound to the merger agreement and therefore did not fall within the scope of the agreement's arbitration provision. D.I. 15-3, Ex. C at 16.

The California court sided with Patel.  It held that "IMEG filed suit against [Patel] in his personal capacity."  D.I. 1-1, Ex. D at 2.  But the court agreed with Patel that he could invoke the arbitration provision of the merger agreement because he acted as "an agent of both TTG and IMEG."  D.I. 1-1, Ex. D at 5.  And the court agreed with Patel that "all claims [in the complaint] [we]re predicated upon alleged failures to meet the disclosure requirements set out by representations and warranties appearing in the Merger Agreement."  D.I. 1-1, Ex. D at 5.  In the court's words:

> [A]lthough [Patel] was not a party to the Merger Agreement and was a non-signatory in his personal capacity, Delaware law[, which governs the merger agreement,] allows for non-signatories to an arbitration agreement to compel arbitration under certain exceptions: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; (5) third-party beneficiary; and (6) equitable estoppel.  Here, [Patel] was clearly an agent of both TTG and IMEG, as all actions undertaken by him were alleged to have occurred either for TTG or IMEG.  Consequently, although [Patel] was not a party to the Merger Agreement in his personal capacity, his alleged wrongful acts were committed for the benefit of TTG and/or IMEG, rather than for his personal interests.

D.I. 1-1, Ex. D at 5 (citations omitted).

Based on these findings, the court granted Patel's motion and dismissed the California action under Rules 12(b)(1), 12(b)(3), and 12(b)(6). D.I. 1-1, Ex. D at 3. The court held that "dismissal of IMEG's Complaint [was] appropriate under Rule 12(b)(1)" because "[t]he Ninth Circuit has held that *when all claims in the dispute are subject to arbitration, dismissal is the appropriate remedy*." D.I. 1-1, Ex. D at 3 (emphasis added). The court similarly ruled that "dismissal [of IMEG's Complaint] under [Rule] 12(b)(3) [was] appropriate": because "dismissal under Rule 12(b)(3) is [a]ppropriate *where a party moves to compel arbitration*." D.I. 1-1, Ex. D at 3 (emphasis added). And the court held that "dismissal [of the Complaint] under [Rule] 12(b)(6) [was] [a]ppropriate" because "dismissal under Rule 12(b)(6) is appropriate *where a court finds that the parties are compelled to arbitrate*." D.I. 1-1, Ex. D at 3–4 (emphasis added).

It is clear from these holdings that the court dismissed the California action based on its understanding that (1) IMEG's claims against Patel were subject to arbitration in Delaware and (2) if IMEG filed its claims against Patel in a Delaware arbitration, Patel would participate in the arbitration. Although the court dismissed the action in favor of arbitration, it did not order the parties to commence an arbitration because, as Patel had argued in his briefing to the court, "[t]he Federal Arbitration Act prohibits a district court from compelling arbitration outside its

district," and the merger agreement required the arbitration to take place in Delaware.  D.I. 1-1, Ex. C at 11–12.

The court confirmed that it understood the parties would be litigating IMEG's claims before an arbitrator when it denied Patel's subsequent request for attorneys' fees.  In the court's words: "Because the arbitration has not yet been completed and the dispute has not yet been resolved on its merits, Defendant's claim for attorneys' fees is not ripe."  D.I. 19-1, Ex. D at 3.

### D.    The AAA Proceedings

On October 4, 2019, IMEG, solely in its capacity as "the successor-in-interest to TTG and KKJW after the merger," D.I. 19-1, Ex. F, Attach. A at 1, filed a Demand for Arbitration with the American Arbitration Association (AAA) in Delaware.  IMEG used for its filing the requisite Demand form provided by the AAA.  IMEG stated in the Demand that "[t]his dispute is submitted to arbitration pursuant to a district court order obtained by Patel pursuant to the arbitration provision in the merger agreement between TTG and KJWW."  D.I. 19-1, Ex. F, Attach. A at 1.  And it attached as exhibits to the Demand the California district court's decision and the merger agreement.  D.I. 19-1, Ex. F.  In the section of the form titled "Brief Description of the Suit," IMEG provided a two-sentence summary of the rent-a-vet scheme and stated that "[f]urther details are alleged in Attachment A."  D.I 19-1, Ex. F.  The three-page Attachment A is a condensed

version of the complaint IMEG filed in the California action.  The attachment

identifies as the causes of action to be arbitrated the same claims IMEG had

alleged in the California action as the successor in interest of TTG and KKJW—

i.e., all the claims in the California action except for the two post-merger

agreement breach of fiduciary duty claims alleged in Counts II and VII of the

California complaint.  D.I. 19-1, Ex. F, Attach. A at 3.

In a letter to the AAA signed by Frey on Epstein Becker letterhead, Patel

contested the AAA's jurisdiction, arguing that because Patel "is not a party to the

Merger Agreement, has not been ordered to arbitrate any claims IMEG may have

against him, and has not consented to the AAA's jurisdiction . . . the AAA cannot

exercise jurisdiction over him."  D.I. 19-1, Ex. H at 1.  Frey further wrote that the

California court had not "dismiss[ed] IMEG's claims 'in favor of arbitration'" and

that "[t]he threshold issue" of whether Patel was bound by the Merger

Agreement's arbitration clause is an "issue for a court, not an arbitrator to decide."

D.I. 19-1, Ex. H at 1.  And Frey wrote that "[t]he AAA does not have jurisdiction

to decide questions regarding arbitrability."  D.I. 19-1, Ex. H at 4.  Finally, Frey

wrote that "Patel highlights the irrefutable fact that *no arbitration agreement*

*exists* between Patel and IMEG or any of the entities IMEG purports to represent

that could possibly cover the arbitration claims brought by IMEG."  D.I. 19-1, Ex.

H at 2–3 (emphasis in original).

On March 18, 2020, the AAA determined that IMEG "ha[d] not met the filing requirement of providing a contract signed by the parties" and thus the AAA would not proceed with arbitration "in the absence of an agreement by the parties or a court order mandating arbitration." D.I. 19-1, Ex. J.

### E.     The Petition and the Pending Motions

On March 26, 2020, IMEG filed the Petition, D.I. 1. Patel filed a motion to dismiss the Petition, D.I. 12, a combined response to the petition and opening brief in support of his motion to dismiss, D.I. 13, and a reply brief in support of his motion to dismiss, D.I. 21. In June 2020, IMEG filed a motion for sanctions pursuant to Rule 11 against Patel, Frey, Epstein Becker, and two Epstein Becker associates. D.I. 23. Patel filed a response to the sanctions motion. D.I. 27. Frey and Epstein Becker are identified as counsel in all of Patel's pleadings in this action. And Frey presented oral argument on Patel's behalf.

## II.     The Petition and Patel's Motion to Dismiss

IMEG asserts in the Petition that "Patel voluntarily invoked, consented to, and judicially admitted that Section 9.18 of the Merger Agreement applies to him and the claims at issue in this dispute, notwithstanding the fact that he is a non-signatory to the Merger Agreement, because he persuaded the District Court in the [California] Action that the claims at issue relate to his former role as an agent of TTG and were therefore subject to mandatory arbitration under Section 9.18." D.I.

1 ¶ 41.  Patel opposes the Petition on four grounds: (1) the Court lacks personal jurisdiction over him; (2) Patel is not estopped from opposing arbitration based on legal arguments he raised in the California action; (3) IMEG "repudiated and waived any purported right to arbitrate" by filing a lawsuit against Patel in California Superior Court; and (4) IMEG's Petition is procedurally defective.  D.I. 13 at 3–4.

I find that Patel is judicially estopped from arguing that this Court lacks personal jurisdiction over Patel and from opposing arbitration of IMEG's claims in Delaware.  None of Patel's arguments have merit.  Accordingly, I will grant the Petition.

### A.    Personal Jurisdiction and Judicial Estoppel

### 1.    Personal Jurisdiction

A court's ability to exercise personal jurisdiction over a defendant in federal court is limited by the Due Process Clause of the Fifth Amendment.  *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103–104 (1987).  That clause "requires (1) that the defendant ha[ve] constitutionally sufficient minimum contacts with the forum[] and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (internal quotation marks and citations omitted).

"The right to move for dismissal for lack of personal jurisdiction…is not unlimited…. [It] can be affirmatively *and implicitly* waived through conduct." *In re Asbestos Prods. Liab. Litig. (No. VI),* 921 F.3d 98, 104–105 (3d Cir. 2019) (emphasis added) (citations omitted).  Waiver can be effectuated by application of the doctrine of judicial estoppel. *See Bosco v. Scott,* 2000 WL 1728150, at *2 n.3 (D. Del. Aug. 31, 2000); *Barnet v. Drawbridge Special Opportunities Fund, LP,* 2014 WL 5334066, at *3 (S.D.N.Y. Oct. 17, 2014); *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.,* 2011 WL 1327137, at *3 (S.D.N.Y. Mar. 31, 2011); *Platypus Wear Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao Ltda.,* 2009 WL 10664822, at *5 (S.D. Fla. Jan. 28, 2009); *Orlando Residence, Ltd. v. GP Credit Co., LLC,* 2006 WL 2849866, at *5 (E.D. Wis. Sept. 29, 2006).  That doctrine provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (citation omitted). The doctrine "is designed to prevent litigants from playing fast and loose with the courts." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and citation omitted).

Judicial estoppel may be imposed when "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Montrose Med. Group Participating Sav. Plan v. Bulger,* 243 F.3d 773, 777–78 (3d Cir. 2001). All three factors are met in the instant case, and thus the invocation of judicial estoppel is warranted.

First, Patel's position that he did not consent to personal jurisdiction in this Court is irreconcilably inconsistent with the position he took in the California action. Patel argued repeatedly and emphatically in the California action that IMEG's claims against him were required to be arbitrated in Delaware under the merger agreement. Necessarily implicit in that argument is Patel's consent to arbitration in Delaware. And when a party consents to arbitration in a particular forum it necessarily consents to personal jurisdiction in the district court of that forum. *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 319 (W.D. Pa. 2020)*; see also BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 261–62 (3d Cir. 2000) (stating that agreement to arbitrate in a specific location "would probably—and properly—be regarded as a waiver of objections to judicial jurisdiction as well").

17

Patel insists that his representations to the California court did not manifest his consent to a Delaware arbitration because he did not seek in the California action an order to compel IMG to arbitrate the claims against him. D.I. 21 at 3. But this contention misses—and, judging from Frey's pattern of conduct before the California court, the AAA, and this Court, is made to deflect from—the salient point. Patel argued in the California action that "IMEG's *claims against Patel are subject to the arbitration provision* of the Merger Agreement," D.I. 1-1, Ex. C at 8; that the California court "should dismiss IMEG's claims *so that they may be arbitrated in Wilmington, Delaware consistent with the terms of the Merger Agreement*." D.I. 15-4, Ex. D at 1 (emphasis added), that "*th[e] action*" in California—in which Patel was the *only* defendant—"is subject to mandatory arbitration," D.I. 1-1, Ex. C at 1 (emphasis added); that "an obligation to arbitrate does not attach only to those who have actually signed the agreement to arbitrate," D.I. 1-1, Ex. C at 9 (internal quotation marks and citation omitted); that "[a]s a former shareholder of TTG, *Patel is a party to the Merger Agreement* vis-à-vis TTG's representative, Zareh Astourian," D.I. 1-1, Ex. C at 3 (emphasis added); that "[u]nder principles of agency, the arbitration provision [in the merger agreement] *applies to Patel*," D.I. 1-1, Ex. C at 7 (emphasis added); and that "the Court *must honor [the] parties' agreement to arbitrate arbitrability*[,]" D.I. 15-4, Ex. D at 14 (emphasis added). These statements were clearly intended to

18

communicate to the court that Patel consented to an arbitration of the claims IMEG

brought against him and that Patel would submit to an arbitration of those claims if

IMEG initiated the arbitration in Delaware.  The California court understood the

statements precisely as Patel intended.  The court held that dismissal was

appropriate based on its finding that "the parties" (i.e., *both* IMEG and Patel) were

obligated to arbitrate IMEG's claims against Patel.  D.I. 1-1, Ex. D at 3–4.  And

the court denied Patel's fee application as unripe "[b]ecause the arbitration has not

yet been completed."  D.I. 19-1, Ex. D at 3.

   Second, Patel has acted in bad faith in abandoning the positions he took

before the California district court.  "A finding of bad faith must be based on more

than the existence of an inconsistency," and two requirements must be met.

*Montrose Medical Group,* 243 F.3d at 781 (internal quotation marks and citation

omitted).  "First, [the party] must have behaved in a manner that is somehow

culpable" such as using the contradiction "as a means of obtaining *unfair*

advantage" or "play[ing] fast and loose with the court."  *Id.* (citations omitted)

(emphasis in original).  Second, the culpable behavior must be "*vis-à-vis* the court"

as opposed to the other party.  *Id.*  In addition, "a party has not displayed bad faith

for judicial estoppel purposes if the initial claim was never accepted or adopted by

a court or agency."  *Id.* at 778.

19

Here, Patel's behavior was directed at the court through his briefing and opposition to the Petition and would result in an unfair advantage. Allowing Patel to pursue his new and inconsistent position would preclude IMEG from pursuing its claims against him entirely. And Patel's initial argument was accepted by the California court, which held "that the matter should be resolved in arbitration, pursuant to a valid and binding arbitration provision in the Merger Agreement," that dismissal "[was] appropriate to enforce an arbitration agreement" and "that the parties are compelled to arbitrate" IMEG's claims against Patel. D.I. 1-1, Ex. D at 2–4.

Third, application of judicial estoppel here is tailored to "address the affront to the court's authority or integrity." *Montrose Medical Group,* 243 F.3d at 778. No other sanction can remedy the damage caused by Patel's assertion of contradictory positions. If the doctrine is not applied, Patel will have used two federal courts to deprive IMEG of a forum to litigate its claims against Patel and will have unfairly manipulated and undermined the integrity of the federal judicial system.

Because all factors of the test for judicial estoppel have been met, I find that Patel is judicially estopped from arguing that Delaware does not have personal jurisdiction over him.

### 2.     Opposing Arbitration

Judicial estoppel similarly precludes Patel from opposing the arbitration of IMEG's claims against him.  As discussed above, Patel expressly argued in the California action that IMEG's claims against him could only be resolved through binding arbitration in Delaware.  That argument, which the California court adopted, cannot be reconciled with Patel's assertion in this Court that he "never agreed to arbitrate IMEG's claims," D.I. 21 at 11.  Patel's pursuit of the diametrically opposite argument here constituted bad faith.  Allowing him to pursue his new position would be unfair to IMEG and undermine the integrity of the judicial process.

### B.     Repudiation of Right to Arbitration

Patel argues that "[p]rior to filing this Petition, IMEG repudiated any purported right to arbitrate more than two years ago when it sued Patel individually in [the Superior Court of the State of] California . . . based on identical legal theories." D.I. 13 at 28.  The problem with this argument is that its premise is not true.  In the California Superior Court action, IMEG brought six causes of action against Patel.  Each cause of action was based on the misrepresentation by Patel of the 2016 year-end "Work in Progress," which resulted in $1,476,159 in bonuses that would not have been paid but for the misrepresentation.  D.I. 15-1, Ex. A at 5–6.  The causes of action that IMEG initially brought in the California action in the

21

District of Northern California and now seeks arbitration of are solely based on Patel's "rent-a-vet" fraudulent scheme. D.I. 1-1, Ex. B ¶¶ 65–127. IMEG's Demand for arbitration filed with the AAA also addresses only Patel's liability for engaging in the alleged rent-a-vet scheme. D.I. 1, Ex. A.

### C.    Procedural Defects

Lastly, Patel argues that IMEG's petition is "procedurally defective under the FAA, the Federal Rules, and this Court's Local Rules, all of which require that a petition to compel arbitration be filed as a motion." D.I. 13 at 30. Patel contends this "procedural deficienc[y] provide[s] independent grounds for the Court to deny IMEG's Petition." D.I. 13 at 30 (citation omitted). Section 4 of the FAA, however, expressly provides states that "[a] party aggrieved by the…refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

### D.    Attorneys' Fees and Costs

IMEG requests in its Petition that I award it the fees and costs it incurred in bringing the Petition. D.I. 1 ¶ 5. "In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification or if the party resisting arbitration did not have a reasonable chance to prevail." *Chauffeurs, Teamsters and Helpers, Local Union*

*No. 765 v. Stroehmann Bros. Co.,* 625 F.2d 1092 (3d Cir. 1980) (internal quotation marks and citations omitted).  Under this standard, an award of fees and costs is appropriate here.  There was no justification for Patel's opposition to the Petition and therefore I will order him to pay IMEG's reasonable fees and costs incurred in bringing and litigating the Petition.

## III.    The Motion for Sanctions

IMEG has moved for Rule 11 sanctions against Patel, Frey, Epstein Becker, and two associates at Epstein Becker.  Under Rule 11(b), when an attorney presents a pleading to the court, the attorney is "certif[ying] that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the pleading

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support...; and (4) the denials of factual contentions are warranted on the evidence . . . .

Fed. R. Civ. P. 11(b).  "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).

Sanctions are appropriate "only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1988 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) (internal quotation marks and citation omitted). Rule 11's "primary purpose is . . . correction of litigation abuse." *Id.* (internal quotation marks and citation omitted). To determine if an attorney's conduct constituted litigation abuse the court should consider "what was objectively reasonable under the circumstances." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994). "[R]easonableness [is] defined as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Shawe v. Potter Anderson & Corroon, LLP* 2017 WL 6397342, at *3 (D. Del. Dec. 8, 2017) (internal quotation marks and citation omitted).

Applying an objectively reasonableness standard, I find that Frey and his law firm, Epstein Becker, engaged in litigation abuse that warrants sanctions. Frey and his firm effectively pulled a bait and switch on the California district court; filed a letter with the arbitrator that falsely stated that the California district court had not "dismiss[ed] IMEG's claims 'in favor of arbitration,'" D.I. 19-1, Ex. H at 1; told the arbitrator that "[t]he AAA d[id] not have jurisdiction to decide questions regarding arbitrability," D.I. 19-1, Ex. H at 1, even though they had persuaded the California court to "honor [the] parties' agreement to arbitrate arbitrability[,]" D.I.

15-4, Ex. D at 14; and opposed IMEG's petition in this Court based on positions

that cannot be reconciled with the arguments they made to the California court.

Counsels' conduct was plainly designed to increase IMEG's costs, cause delay,

and, ultimately, prevent IMEG from adjudicating its claims against Patel in any

forum.

Counsels' response to the Rule 11 motion confirms the need for sanctions

here.  They argue in that response that Patel's current position does not differ from

his position in the California action because the claims IMEG has alleged in its

arbitration Demand are different from the claims it alleged in the California

complaint.  D.I. 27 at 6–8, 15–17.  This argument has no merit and merely

confirms counsels' willingness to mislead courts.  Although stated in more

abbreviated fashion, as necessitated by the AAA's Demand form, the claims IMEG

set forth in the Demand for Arbitration are substantively the exact same claims

IMEG alleged in the California complaint as the successor-in-interest to TTG and

KKJW.  The differences counsel identify between the California complaint and the

Demand are either of no moment or non-existent.  Counsel state, for example, that

> [t]he California Complaint also alleges that "***TTG*** had for
> years been engaged in a fraudulent scheme" while the
> Arbitration Demand substitutes "**TTG**" to allege "***Patel***
> had for years ***perpetrated and directed*** the fraudulent
> scheme . . .

D.I. 27 at 8 (emphasis in original) (citations omitted).  But in fact the California complaint explicitly alleged that "[a]t Patel's direction and with his knowledge, TTG used [the veteran in question] . . . as a front to compete for government contracts that were specifically set aside" for veterans, D.I. 1-1, Ex. B ¶ 41; that "Patel continue[d] to perpetuate" the rent-a-vet scheme, D.I. 1-1, Ex. B at 8; and that "Patel, by means of implementing and perpetuating the [rent-a-vet] scheme, knowingly acted against TTG's interests and unreasonably exposed TTG to civil and criminal liability for defrauding the government," D.I. 1-1, Ex. B ¶ 68. Counsel similarly state that "IMEG's Arbitration Demand shifts the nature of the claims by removing any allegation that Patel owed a duty because he was a director of IMEG." D.I. 27 at 8.  But IMEG did not pursue its direct fiduciary claims against Patel in the arbitration and instead pursued only TTG's fiduciary claims against Patel in IMEG's capacity as TTG's successor-in-interest.  Thus, there was no need to reassert in the arbitration that Patel owed fiduciary duties to IMEG.

In short, IMEG did not change its claims; rather, Patel's counsel changed their characterization of the claims in an effort to delay and ultimately deny IMEG the opportunity to litigate those claims.  Having persuaded the California court that IMEG's claims should be dismissed in favor of arbitration because they are not personal claims, Frey now insists in his response to the sanctions motion that I

should deny IMEG the ability to arbitrate the claims because they are personal claims. D.I. 27 at 11–15.[2] There is no room in the federal judicial system for this kind of gamesmanship. Frey and his firm have played fast and loose in two federal courts and deceived an arbitrator with blatant misrepresentations. The gamesmanship must end.

Sanctions imposed pursuant to Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id*. Sanctions can be imposed "on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

I find that the appropriate sanction in this case is for Frey and his firm to pay IMEG an amount equal to the reasonable attorneys' fees and expenses IMEG incurred in filing and briefing its Petition. Frey was Patel's lead counsel in the

---

[2] It bears mention that under Delaware law, which governs the merger agreement, a corporation can pursue personal claims against a faithless fiduciary who was acting as an agent of the corporation. *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 828 n.246 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of Louisiana v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011)

California action and this action, signed the motion to dismiss in the California action and the letter to the AAA, and made the oral argument on Patel's behalf in this action.  I do not believe it is necessary to sanction Patel personally or the associates at Epstein Becker who worked for Frey.  Thus, I will grant the sanctions motion with respect to Frey and Epstein Becker and deny the motion with respect to Patel and his other counsel.

I recognize that this ruling means that IMEG will effectively recover double the amount of its fees and costs, since I have also determined that Patel must personally pay IMEG's fees and costs to bring the Petition.  But I believe that this sanction is necessary given the gravity of the conduct, the need to deter such conduct, the fact that the conduct was directed at two federal courts, and the fact that IMEG filed its original complaint in California in May 2019 and still has not been able to litigate the merits of its claims against Patel, all because of the abusive tactics employed by Frey and his firm.

## IV.   CONCLUSION

For the reasons discussed above, I will grant IMEG's petition to compel arbitration and grant in part and deny in part IMEG's motion for Rule 11 sanctions. I will deny Patel's motion to dismiss.

The Court will enter an order consistent with this Memorandum Opinion.

28